The decision below is signed as a decision of

the court.

Signed: December 22, 2006.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
REGINA Y. DRAKE,                   )   Case No. 06-00261
                                   )   (Chapter 13)
          Debtor.                  )

MEMORANDUM DECISION RE TRUSTEE'S
SUPPLEMENTED OBJECTION TO CLAIM OF HSBC AUTO FINANCE

The chapter 13 trustee has filed an objection (Docket Entry No. 39) to the $23,125.81 proof of claim of HSBC Auto Finance ("HSBC") (which asserted a secured claim of that amount in a motor vehicle), asking that it be treated as unsecured instead of secured, and has supplemented her objection after the court asked her to address certain issues.

I

The trustee objects that:

> said creditor has failed to provide sufficient documentation in support of its claim including its lien on the property of the estate and its petition date replacement value of said collateral, although scheduled by the debtor in the amount of $15,478.00.

(Obj. at 1). This is a familiar type of objection based on 11 U.S.C. § 506(a). The trustee objects further that:

> Alternatively, said creditor has failed to meet its burden of proving the inapplicability of U.S.C. § 506 by failing to assert and produce a purchase money security interest securing its debt that is the subject of the claim and by failing to indicate the acquisition use of said collateral.

(<u>Id.</u>).  By stating that a purchase money security interest has not been produced, the court infers that the trustee means to say that the proof of claim does not show that the claim comes within the exception to § 506 contained in the dangling language appended at the end of § 1325(a), which provides:

> For purposes of paragraph (5) [specifying the treatment required for each allowed secured claim provided for by the plan], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a).

The trustee's objection to the claim appears to have been related to her objection to confirmation of the debtor's second amended plan, in which she objected that:

> the payment of any arrears claim to HSBC Auto Finance, an undersecured creditor, amounts to an implicit classification of creditors which unfairly discriminates against remaining general unsecured creditors in violation of 11 U.S.C. § 1322(b)(1).

(Confirmation Obj. ¶ 7).  Under the second amended plan, general unsecured claims were to be paid 100% of their claims, without postconfirmation interest (or postpetition-preconfirmation

2

interest), whereas HSBC's prepetition arrears claim was to be paid 100% with 6% postconfirmation interest, regardless of whether it was a secured claim.

However, the debtor has filed a third amended plan which proposes to pay interest on the allowed claim of HSBC only to the extent that it is an allowed secured claim, and to pay any unsecured claim of HSBC in the same manner as other unsecured claims not entitled to priority.  The third amended plan fails to indicate whether the allowed secured claim of HSBC is the amount allowed under § 506(a) or instead is the full amount of the claim (based on the dangle of § 1325(a) being applicable to render § 506(a) inapplicable).  Nevertheless, if any portion of HSBC's claim is treated as unsecured, that part of the claim would not be paid with interest, and that would reduce the amount of payments that the debtor is required to pay the trustee under the plan.

II

The debtor's schedules treated HSBC as a secured claim to the extent of the car's scheduled value of $15,478.  That is evidence that HSBC held a lien on the car.  Moreover, the proof of claim attached a security agreement whereby the debtor granted HSBC a security interest.  Although that security agreement did not include a signature of the creditor, the District of Columbia's version of the Uniform Commercial Code only required

3

the debtor's signature on the security agreement for there to be an enforceable security interest.  See D.C. Code § 9-203(b)(3)(A); Falconbridge U.S., Inc. v. Bank One Illinois (In re Vic Supply Co., Inc.), 227 F.3d 928 (7th Cir. 2000) (lack of creditor's signature on security agreement was not fatal even though security agreement specifically provided that it was effective only when "accepted" by the creditor "as provided below," meaning signed in the blank space for signature).  So there can be no doubt that HSBC had a security interest in the vehicle.

The trustee's objection regarding failure to attach evidence of the lien may be that no evidence of perfection of the security interest has been appended to the proof of claim as required by Rule 3001(d) and by the Official Form.[1]  However, that alone is not a basis for disallowing the claim, and the trustee did not affirmatively contend in her objection that the claim is unperfected.  A creditor's failure to fully comply with the documentary requirements of Rule 3001(d) does not provide a basis for disallowing a claim.  Dove-Nation v. eCast Settlement Corp.

---

[1] Once the District of Columbia issues a certificate of title to a motor vehicle, a security interest can be perfected in that vehicle only by its being noted on the certificate of title, but beforehand, the rule of first in time, first in right prevails.  See McCarthy v. BMW Bank of N. Am. (In re Dorton), 327 B.R. 14 (Bankr. D.D.C. 2005), aff'd, 346 B.R. 271 (D.D.C. 2006), appeal pending (D.C. Cir.).  Accordingly, HSBC ought to have appended to its proof of claim a copy of the certificate of title (assuming one was issued, which is likely).

(In re Dove-Nation), 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004); In re Shank, 315 B.R. 799, 812 (Bankr. N.D. Ga. 2004) (concluding that "an objection to a proof of claim based solely on the lack of attached documents provides no basis for disallowance of a claim, even if the claimant declines to respond to the objection.").

The court raised this issue in its order directing the trustee to supplement her objection to HSBC's claim. In response, the trustee has stated that if the creditor does not produce a copy of the certificate of title that bears a notation of its lien, the trustee recommends that the claim be allowed as unsecured only in the amount filed less all post-petition payments received by the creditor. This still fell short of affirmatively alleging that the security interest was unperfected, but even if the objection had made that affirmative allegation, the issue of perfection could not be adjudicated pursuant to the objection to claim.

HSBC did not consent to the issue being adjudicated via an objection to claim. A lien remains in place unless avoided, and the avoidance of a lien must be pursued via an adversary proceeding unless the creditor consents to its being adjudicated

via some other procedural vehicle.[2]  Accordingly, the court will dismiss the objection to claim without prejudice with respect to its contesting whether the lien was perfected.

### III

The court turns next to the issue of the amount that ought to be allowed as a secured claim if 11 U.S.C. § 506(a) applies.

#### A.

A preliminary issue is whether the amount of an allowed secured claim can be fixed via an objection to claim.  A claim is allowed unless objected to.  11 U.S.C. § 502(a).  Accordingly, when a claim overstates the portion of the claim that is an allowed secured claim by reason of overstating the value of the collateral, an objection to claim must be filed to disallow the erroneous portion of the claim.  A proof of claim asserting a secured claim places value in play as an issue with respect to allowance of the claim.  Nothing in the Federal Rules of

---

[2] Avoidance of the lien as unperfected pursuant to 11 U.S.C. § 544(a) ordinarily would require an adversary proceeding unless the creditor appeared in response to an objection to claim and waived the requirement of an adversary proceeding.  Fed. R. Bankr. P. 7001; see also In re Anderson, 330 B.R. 180, 188 (Bankr. S.D. Tex. 2005); but see In re Kleibrink, 346 B.R. 734, 749-53 (Bankr. N.D. Tex. 2006) (in certain circumstances a lien may be invalidated via an objection to claim).  One of the protections an adversary proceeding confers on a lienholder whose lien the trustee seeks to avoid is the requirement of service under Fed. R. Bankr. P. 7004.  In contrast, an objection to claim may be served under Fed. R. Bankr. P. 3007 by mailing the objection to the claimant at the address at which it indicated on the proof of claim that notices should be sent.  In re Hawthorne, 326 B.R. 1 (Bankr. D.D.C. 2005).

Bankruptcy Procedure bars determination of the value of the collateral incident to an objection that the proof of claim has overstated the amount of the claim that is secured versus unsecured.

Under Fed. R. Bankr. P. 3012, "[t]he court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct."  However, Rule 3012 is an additional vehicle for valuing collateral and does not bar a court's ascertaining the value of collateral pursuant to a Rule 3007 objection to allowance of a claim that overstates the portion of the claim that is secured.  Rule 3012 applies even when no proof of claim has been filed, and is necessary for different reasons than Rule 3007, as the valuation of collateral is important for purposes other than only the claims allowance process.  For example, if a debtor wishes to fix the value of collateral in order to determine what adequate protection must be accorded the creditor, it could proceed by a Rule 3012 motion. When, however, a party disputes a proof of claim's assertion of the value of collateral securing a claim, that party is authorized to proceed by way of a Rule 3007 objection to claim. It makes no sense to require a cumbersome two-step process of filing a Rule 3012 motion to fix value and then a Rule 3007

objection to claim to disallow the asserted secured claim based on the value fixed pursuant to the Rule 3012 motion.  Moreover, the difference in requirements regarding service is an additional factor that could make a two-step process more onerous.[3]

Nothing in the Federal Rules of Bankruptcy Procedure demonstrates that the rule makers intended to make Rule 3012 the sole vehicle for valuing collateral to the exclusion of other vehicles such as Rule 3007.[4]  See Connecticut Nat'l Bank v.

---

[3] Fed. R. Bankr. P. 9014(b) directs that service of a Rule 3012 motion is governed by Rule 7004, whereas an objection to claim is governed by Rule 3007.  By filing a proof of claim, the creditor subjects itself to service under Rule 3007 of an objection to its claim.  Hawthorne, 326 B.R. at 4-5.  When a creditor has not filed a proof of claim, and a motion must be utilized to address the value of the creditor's collateral, it makes sense that service should be made under Rule 7004, but it would not make sense to require such service when the creditor has filed a proof of claim listing an address for receiving notices relating to that claim.  Hawthorne, Id. at 5.

[4] The Advisory Committee Note (1983) to Rule 3012 suggests that a Rule 3012 valuation motion could be used for certain adjudications ("impairment under § 1124, or treatment of the claim in a plan pursuant to § 1129(b) of the Code") that one would think could ordinarily be accomplished via an objection to claim.  However, a Rule 3012 valuation motion could theoretically be filed prior to the creditor's filing a proof of claim.  In any event, the Advisory Committee Note did not purport to address whether Rule 3012 was to be the exclusive vehicle for valuing collateral securing a claim.  Instead, the Advisory Committee Note appears to have been attempting to list examples of valuation issues that do not require an adversary proceeding ("commenced when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001"), and Rule 3012 may have been intended to clarify that Rule 7001 does not apply to proceedings to value collateral.  The bottom line is that when a proof of claim over-states the value of a creditor's collateral, a party may challenge that valuation either by way of a Rule 3012 motion or a Rule 3007 objection to claim.

Germain, 503 U.S. 249 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, Wood v. United States, 16 Pet. 342, 363, 10 L.Ed. 987 (1842), a court must give effect to both."). For purposes of fixing the allowed amount of a secured claim based on the value of the collateral securing the claim, there is no reason Rule 3007 and 3012 "cannot comfortably coexist . . . ." Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 129 (1995). Accordingly, Rule 3012 does not preclude the determination of value of collateral incident to a Rule 3007 objection to claim.

B.

The failure of the creditor's claim to include a statement of the collateral's value in accordance with the requirements of the Official Form as required by Fed. R. Bankr. P. 3001(a) may make Fed. R. Bankr. P. 3001(f)[5] inapplicable such that the proof of claim is no longer prima facie evidence of the validity and amount of the claim. In re Mazzoni, 318 B.R. 576, 577-78 (Bankr. D. Kan. 2004). The failure to list the value of the collateral on the proof of claim, however, does not by itself require

---

[5] Rule 3001(f) provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."

9

disallowance of the claim as an allowed secured claim.[6]

Nevertheless, the trustee has pointed to sufficient evidence to disallow part of the creditor's asserted secured claim.  The debtor's original Schedule B listed the automobile as being worth $15,478.  Although the debtor amended Schedule B to list the debtor's Mercedes automobile as being worth $22,975, the debtor has withdrawn that amendment, and the amendment will be disregarded.  At this juncture, the only evidence of value is the $15,478 value placed on the car by the debtor.  Accordingly, the record contains sufficient evidence to demonstrate that under § 506(a), $15,478 of the claim would be an allowed secured claim, but the balance would be an allowed unsecured claim in the amount of $7,737.81.

IV

Regarding the issue of whether the "dangling" paragraph in § 1325(a) creates an exception to § 506(a) as to HSBC's claim, assuming that the issue is properly before the court, two distinct questions are presented.  The proof of claim discloses that the debt is secured by the debtor's car, and that the date of the loan was February 28, 2005.  The petition was filed on July 27, 2006, fewer than 910 days after the debt was incurred on

---

[6] The proof of claim here implicitly represented that the value of the collateral equaled or exceeded the amount of the claim because HSBC did not list any amount as unsecured when instructed to indicate the amount of any unsecured claim if "your claim exceeds the value of the property securing it."

10

February 28, 2005.  Accordingly, for the dangling paragraph of § 1325(a) to apply, (1) the car must have been "acquired for the personal use of the debtor," and (2) HSBC must have "a purchase money security interest" in the car.

A.

Regarding the issue of whether the car was "acquired for the personal use of the debtor," the trustee contends not that the car was not for the debtor's personal use, only that the creditor has not indicated on the proof of claim for what use the debtor acquired the car.  However, a creditor is not required to indicate on a proof of claim the use for which its collateral was acquired, and even if it were required to do so, that would not be a basis for disallowing the claim (as opposed to making Rule 3001(f) inapplicable).

B.

With respect to the issue of whether HSBC has a "purchase money security interest" in the car, the debtor testified at the confirmation hearing that HSBC's loan was obtained by her after she had already purchased the car.  However, there remains the question whether the issue of the applicability of § 1325(a) has been properly presented to the court.

V

An objection to claim is an inappropriate procedural vehicle for determining whether the § 1325(a) dangle applies.  The

11

Official Form for a proof of claim requires the holder of the claim to set forth the amount of the allowed secured claim based on § 506(a) being applicable.  If the § 1325(a) dangle is applicable to a plan, that is a matter that goes not to the validity of the proof of claim, but instead to the required treatment of the claim under a chapter 13 plan (allowance in a manner different from the allowed secured claim shown on the proof of claim).

   Because § 1325(a) sets forth requirements for confirmation of a plan, it follows that determination of the applicability of the dangle of § 1325(a) can be accomplished via an objection under Fed. R. Bankr. P. 3015(f) to a plan that specifies whether the dangle applies.  As to each allowed secured claim that entails an automobile as collateral and that is being provided for by a plan, it is desirable that the debtor specify in the plan whether the allowed secured claim is the amount constituting an allowed secured claim under § 506(a) or is instead the allowed secured claim resulting from § 506(a) being treated as inapplicable (by virtue of the dangling language of § 1325(a) being applicable).  That frames the issue as one that can be resolved via an objection to confirmation of the plan.

   Unfortunately, in this case the debtor's third amended plan only provides for full payment of HSBC's allowed secured claim without specifying the amount of that allowed secured claim under

the plan (that is, the amount determined in accordance with § 506(a) or instead the amount determined when § 506(a) is treated as inapplicable).  The issue is thus not susceptible of resolution in this case via an objection to confirmation of the plan, and must be resolved in some other fashion.

A party in interest may pursue a motion (the procedural vehicle prescribed by Fed. R. Bankr. P. 9014(a) when no other procedural vehicle is prescribed by the Rules) to declare whether the dangle applies.[7]  The objection to claim here was neither styled as a motion nor served as a motion (which requires service under Fed. R. Bankr. P. 7004 by reason of Fed. R. Bankr. P. 9014(b)).  In any event, the objection to claim did not fairly put HSBC on notice that what was at stake was determination of whether the § 1325(a) dangle would be applicable to its claim

---

[7]  A debtor and a trustee may need a determination of that issue in advance of confirmation of a plan in order to assess, for example, whether the debtor's plan proposes sufficient payments to be confirmable (the type of issue the trustee has raised regarding the debtor's third amended plan).  Alternatively, a motion postconfirmation may be necessary, for example, where the debtor's confirmed plan is silent regarding whether the § 1325(a) dangle applies, and the trustee needs a determination of whether the allowed secured claim is to be fixed under § 506(a) or instead without § 506(a) being applicable.

13

under any plan in this chapter 13 case.[8]

## VI

For the foregoing reasons, the court will issue an order determining the allowed amount of HSBC's secured claim under § 506(a) to the extent that its lien is not avoided and is not entitled to treatment under the § 1325(a) dangle, and otherwise dismissing the objection without prejudice to the extent it seeks (1) a determination that the lien was not perfected, or (2) a determination that the § 1325(a) dangle is inapplicable if the lien is not avoided.

[Signed and dated above.]

Copies to:

Debtor

Debtor's Attorney

Trustee

HSBC Auto Finance (f/k/a Household Auto Finance Corp)
P.O. Box 17906
San Diego, CA 92177

---

[8] The trustee's response to the court's order requesting supplementation of her objection raised for the first time the assertion that HSBC had received two postpetition payments from the debtor, and requested that the claim be reduced by the amount of those payments. Because that issue was not raised as part of the objection to claim, HSBC has not been put on proper notice to defend against that assertion.

14